## RAMSEY v. COOLBAUGH & BROOKS.

1. ACT OF CONGRESS CONSTRUED: SPECIAL BAIL. The "special bail" contemplated by § 11, of the Judiciary Act of 1789, does not include delivery bonds executed to discharge property from the levy of a writ of attachment.

2. SAME: EFFECT OF REMOVAL ON BOND. The removal of a cause from a State to a Federal court, in accordance with the provisions of the Judiciary Act of 1789, does not of itself have the effect to render a delivery bond already filed in the cause inoperative; neither does such removal so enlarge or change the obligation of the sureties on such bond as to discharge them.

3. SAME. The undertaking of the obligors on such a bond is not limited to the sheriff serving the process. It is for the benefit of the real parties in interest, and requires them to deliver the property to the officer who has the final process.

4. SUBSTITUTION OF BONDS. Courts of general jurisdiction have, for purposes of substitution, full power over bonds filed on mesne process, and an order permitting the withdrawal of one filed upon the performance of certain acts to keep intact the security, is not a "further proceeding" in a cause within the meaning of the Judiciary Act of 1789.

*Appeal from Henry District Court.*

THURSDAY, APRIL 17.

ON the 26th day of January, 1856, plaintiff sued one McFaul in the District Court of Des Moines county, and obtained an attachment, which was levied upon some $30,000 worth of pork. McFaul was a non-resident of the state, and was not served. On the 29th of that month, McFaul released

this property by executing a delivery bond, with defendants, Coolbaugh & Brooks, as his sureties. This bond was payable to plaintiff, and in the form required by the statute. In April, 1856, McFaul appeared by his attorney, and filed his petition for the removal of the cause to the United States District Court for the district of Iowa, showing that the amount in value was over $500, and that the parties were residents of different states. The State Court ordered the removal, as shown by the following entry:

" The defendant in this case, having, at the time he entered his appearance to this suit, made it appear to the satisfaction of the court that the plaintiff, James C. Ramsey, is and was at the commencement of this suit a citizen of the State of Iowa, and that said defendant, Eneas McFaul, is and was at the time of the commencement of this suit a citizen of the State of Missouri; and having at the same time filed his petition for the removal of said cause, for trial, into the District Court of the United States, to be held in the southern division of the District Court of Iowa, and having offered and given good and sufficient security for his entering, in said court, on the first day of its session, copies of said process and cause against him, and also for his then appearing and giving good and sufficient security for the return and delivery of the property attached, or its apprised value, to answer any judgment that may be rendered against him, in the same form and to the same effect as he is now held in this court. It is therefore ordered by the court that this cause proceed no further, and that the same be removed, in accordance with the prayer of said defendant, to the District Court of the United States, for the southern division of the district of Iowa, and it is further ordered by the court, that whenever the removal of said cause to said United States District Court is perfected by said defendant, by filing in said court the copies aforesaid, and making and executing the bond aforesaid, that said defendant have

leave to withdraw from the files of this court the indemnifying bond heretofore executed by him in this cause."

The bond thus given by McFaul for entering said cause, &c., was signed by himself, with Warren and Thomas as his sureties. McFaul did enter the suit in the District Court of the United States, as required, and filed his bond "to comply with the conditions of his undertaking," in the State Court, signed by the same sureties, which bond was duly approved, the sureties having justified. This bond, among other things, contains this recital: "This bond is intended to be, and is substituted, in lieu of said bond so given in said proceedings in the State Court." The bond signed by Coolbaugh & Brooks, the one now in suit, was delivered to McFaul, by the clerk of the State Court, to be canceled, and was exhibited to the sureties, who erased their names, believing themselves discharged. The sureties, at that time, had ample indemnity, which they then delivered to McFaul. In May, 1856, Ramsey recovered judgment against McFaul for near $19,000. The cause was taken to the Supreme Court of the United States, a *supercedeas* bond filed, with Warren and Thomas as sureties, and the judgment affirmed in 1858. In September, 1857, McFaul, Warren and Thomas became insolvent, and have continued so ever since. Coolbaugh & Brooks had no notice of any claim by plaintiff against them, on said bond until near the 1st of December, 1858. The Marshal, under an execution, demanded from them the property attached, or its appraised value, which was refused, and this action was commenced on the bond. The cause was submitted to the judge below, who found the above facts, and also that the counsel for Ramsey were present in court at the time of making the orders above stated.

Judgment for defendants, and plaintiff appeals.

*Rankin & Miller* for the appellants, contended:

1. That the Federal Court did not discharge or release the defendants from their obligation, nor did it intend to do so. 2. That the action of the State Court on that subject was *coram non judice*, and therefore void. 3. That all the subsequent proceedings of the parties, of the clerk, or of the court, being based upon this void order, have no effect in releasing defendants from their obligation: and in support of these propositions cited: Judiciary Act of 1789, 1 Stat. at Large, p. 79; *Gordon* v. *Longest*, 16 Pet. 105; *Karouse* v. *Martin*, 15 How., 198; *The State of Iowa* v. *Church*, 8 Iowa, 257.

*David Rorer* and *Charles H. Phelps* for the appellee.

The defendants, Coolbaugh & Brooks, are mere securities. Securities on bonds are only holden *strictissimi juris*. "If there be securities bound by them, and the meaning is doubtful, the construction is restricted and made most favorable to the sureties." And "when the undertaking is general, it shall be restrained, and its obligatory force limited within the recitals." *Bell et al.* v. *Bruin*, 1 How. 186; *Arlington* v. *Merricke*, 3 Saund., 403, 413, 414; *Liverpool Waterworks Co.* v. *Atkinson*, 5 East., 507; *Wardens, &c.*, v. *Bostwick*, 2 Bos. & P., 175; *Leadly* v. *Evans*, 2 Bing. R., 32; *Pepin* v. *Cooper*, 2 Barn. & A., 431; *Barker* v. *Pyott & Parker*, 1 Term R., 287; *Strange* v. *Lee*, 3 East., 484, 490; *Leggett* v. *Humphreys*, 21 How., 76; *Miller* v. *Stewart*, 4 Wash. C. C., 29; *McGuiniss* v. *The Bank of the United States*, 12 Wheat., 511; *The United States* v. *Boyd*, 15 Pet., 187; *Walsh* v. *Bailey*, 10 John., 186.

This bond never contemplated a suit in the District Court of the United States. By removal to the Federal courts, the cause became a new suit, and this bond was rendered inoperative. *Martin* v. *Karouse*, 1 Blatch. C. C., 148, 150; *McLead* v. *Duncan*, 5 McLean, 142; *Thomp.* v.

*Young,* 2 Ohio, 334; *Rany and another* v. *The Governor,* 4 Blackf.; *The United States* v. *Kirkpatrick,* 9 Wheat., 720; *The United States* v. *Howard and Howard,* 4 Wash. C. C., 96; *Armstrong & Case* v. *The United States,* 1 Pet. C. C. R., 46; *The United States* v. *Morgan & Farquhar,* 3 Wash. C. C.; *Toland* v. *Sprague,* 12 Pet., 327; *Jones* v. *Peasley,* 3 G. Greene, 42; *Brown* v. *Clarke,* 4 How., 4; *Austin, & Co.* v. *Burgett,* 10 Iowa, 302; *Woodward* v. *Adams,* 9 Id., 474; *Sadlier* v. *Fallen,* 2 Curtis C. C., 579; *Levi* v. *Fitzpatrick,* 15 Pet., 171; *McKay* v. *Donald,* 5 Ala., 388; *Tarver* v. *Fauce,* 5 Ala., 712; *Commonwealth* v. *Simmington,* 1 Watts, 310; *Pybus* v. *Gibbs,* 38 L. & E. R., 57; *Laflin* v. *Fowler,* 18 John, 335; *Gray* v. *Gildeierxe,* 7 Rich. S. C., 168; *Brown* v. *Dillahunty,* 4 Smede & M., 113; *Bell et al.* v. *Bruen,* 1 How., 186; *Holland* v. *Bouldin,* 4 Monr., 150.

The plaintiff having availed himself of the change in the United States Court, to proceed to trial and judgment against McFaul without objection, is bound by the *terms* thereof. *These defendants* having acted on the faith of those terms, *in delivering up their indemnity,* plaintiff is estopped to deny the validity thereof; it would be a fraud. *Simons* v. *Steele,* 36 N. H., 73; *Hicks et al.* v. *Cram et al.,* 17 Verm., 449; *Crocker* v. *Lashbrook,* 5 Monr., 544; *Kelly* v. *Dexter,* 15 Verm., 310; *Kinney* v. *Farnsworth,* 17 Conn., 355; *Banks et al.* v. *Tract Society,* 4 Sand. Ch. R., 438; *Lovelady* v. *Davis* (4 George), 33 Miss., 577; *Blodgatt* v. *Blackford,* 30 Verm., 731.

The liability of the sureties on the bond in question is created by the statute of the state, and as there was no law of Iowa authorizing the removal of causes from the state to the Federal courts, such removal does not carry the liability of the sureties on a delivery bond, beyond the jurisdiction of the state courts. Pars. Cont., 81; *The United States* v. *Monson,* 1 Gall. C. C. R., 5; *Shelby* v. *Guy,* 11 Wheat., 361 (6 Pet. Cond. R., 348); *Elmandorf* v. *Taylor,*

6 Pet. Cond. R., 47; *McKeen* v. *Delaney's Heirs*, 5 Cranch, 22 (2 Pet. Cond. R. 39).

The bond is a statutory security on *mesne* process over which courts of general jurisdiction have complete and absolute power. Cow. & Hill's Notes to Phill. Ev., pt. 1, 89, 314; *Allen* v. *Hawks*, 13 Pick., 84; *Leggett* v. *Boyd*, 13 Wend., 379; *Irwin* v. *Caryell*, 8 John.; 1 Phill. Ev., 161 (3d edition); *Hammill* v. *Griffin*, 3 G. Greene, 207; *Bailey* v. *Hole*, 3 Carr. & Payne, 560.

WRIGHT, J. — The respective claims of the parties to this important controversy, may be stated thus: Appellant insists that the action of the State Court in reference to the new bond, and its effect upon the first sureties, was *coram non judice* and void, that the Federal Court did not discharge the defendants from their obligation, nor intend to do so, and that all proceedings by parties, clerk or court, based upon the void order aforesaid, could not discharge these sureties from their liability. Appellees insist, on the other hand, that this order was not void, that they are sureties, that they were only bound by the recitals in the bond to have the property forthcoming to the sheriff, and to answer the judgment of the State Court, and that the subsequent removal of the cause to the Federal Court released them, because it enlarged or changed their liability, or the *status* of the case, as it stood at the time they signed the bond. It is also insisted that by the said removal this bond became inoperative, that thereby the attachment was dissolved, that the bond was in the nature of " bail," and that the law of Congress required a new undertaking, in lieu of that given to the sheriff. And finally, that defendants, having acted in good faith, upon the action of the court, in delivering up their indemnity, plaintiff is estopped from denying the validity of the new bond—that to permit it would be a fraud upon their rights.

The Judiciary Act of 1789, under which the cause was

removed to the Federal Court, provides, that in an action by a citizen of the state in which the suit is brought, against a citizen of another state, for a sum of five hundred dollars, or over: "If the defendant shall, at the time of entering his appearance in such State Court, file a petition for the removal of the cause for trial into the next circuit court to be held in the district where the suit is pending," * * * * * "and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of said process against him, and also for his there appearing and entering special bail, if special bail was originally requisite therein, it shall then be the duty of the State Court to accept the surety, and proceed no further in the cause, and any bail that may have been originally taken shall be discharged, and said copies being entered as aforesaid in said court of the United States, the cause shall proceed in the same manner as if it had been brought there by original process. And any attachment of the goods or estate of the defendant by the original process, shall hold the goods or estate so attached, to answer the final judgment, in the same manner as by the laws of the state they would have been holden to answer final judgment, had it been rendered by the court in which the suit commenced." (1 Stat. at Large, 79.)

In giving a construction to this statute, so far as necessary to the disposition of this cause, we remark:

*First.* The special bail therein mentioned does not refer to a delivery bond, or bond executed for the forthcoming of property attached by the sheriff in the State Court. It is correctly claimed by appellant that " bail" as here used means an undertaking for the personal appearance of a party, or refers to one who may undertake for another. A delivery bond is not special bail. There is a wide distinction between the two obligations upon general principles, and this distinction is clearly recognized by the act

under consideration, for that expressly provides for the entering of "special bail," and for the effect of the removal upon the property attached. The property is to be held, but upon the entering of special bail that originally taken is discharged. Bail saves a man from imprisonment, his friends undertaking for him that he shall appear at a day certain, "and answer whatever shall be objected to him in a legal way." (1 Bac. Abr., 321.) And this is the kind of bail meant by this statute, and not bonds for the delivery of attached property.

*Second.* Nor are we of the opinion that the removal of the cause into the Federal Court, under this statute, would, *ipso facto*, in the language of defendants' counsel, render the bond inoperative—nor did it so enlarge or change their liability as to discharge them. Taking it for granted, as they claim, that as the cause stood at the time this bond was given, it could not be removed, because being a suit by foreign attachment, the Federal Court could not take jurisdiction of it, the fact would still remain that the subsequent appearance of the defendant to the action would remove all difficulty, and give the jurisdiction, if he applied for and obtained a change of tribunals in the manner pointed out by law. His right to do this was as much a part of the law of the contract entered into by these defendants, as his right to a change of venue to another county or judicial district in this state. Their undertaking was that the property should be forthcoming to answer "the judgment of the court in said suit." Not, as claimed by appellees, the court in which the action was then pending, alone, but the court having jurisdiction, which finally rendered the judgment. Neither was their undertaking limited to the sheriff serving the process, as obligee, but it was for the benefit of the plaintiff, the real party in interest, and required them to deliver it to the officer (sheriff or marshal) who had the final process.

*Third.* But the cardinal point in the case remains to be considered, and that is, the effect to be given to the order for the substituted security. As we have seen, the language of the law is that "it shall then be the duty of the State Court to accept the security and *proceed no further in the cause.*" The argument of appellant is that this order is utterly void, because made after the court had ceased to have jurisdiction of the cause, — that when the security was accepted that court had no power to proceed further in the suit. As applied to the facts and actual circumstances of this case, we do not think this position tenable.

The argument drawn from the object and purpose of the law of Congress does not strike us as having much weight. This policy is very clearly stated by Justice McLEAN, in *Gordon* v. *Longest*, 16 Pet., 105, and is said to be to create a court in which a party litigating with a man in his own home and neighborhood may have a tribunal free from local influences. Manifestly, therefore, when the citizenship in another state, and the amount in controversy, are made to appear, and the offer made of sufficient surety for appearance in the Federal Court, the power of the State Court to take cognizance of the action so as to try it, or to adjudicate any question touching the merits of the controversy, is at an end. And if the State Court should disregard such application, and proceed to hear the case, this would be an unwarranted exercise of jurisdiction, and the whole proceeding would be void. The case above cited, and that of *Kanouse* v. *Martin*, 15 How., 198, referred to by counsel, substantially recognize this rule, and do not go beyond it. Here is a case, however, where a bond, statutory in its character, was given on *mesne process*. Plaintiff had no special vested right to these particular sureties. Before the property could be released from the process, the law required a bond. This was for the plaintiff's benefit; this was his right. The sureties may be changed, and others, subject to

the approval of the court, substituted.   Over these bonds, for purposes of substitution, courts of general jurisdiction have complete power.   An order for such substitution, or, as in this case, that upon the performance of a certain act, (which was to keep intact plaintiff's security,) this bond might be withdrawn from the files, is not a further proceeding in a cause, within the meaning of the act in question.

Again, we are not to lose sight of the fact that the contemplated bond was given.   This was filed in the Federal Court, and approved by the judge thereof.   A recitation in the new bond is, that it " is intended to be and is substituted in lieu" of the one now in suit.   The records in this court show that the defendant produced a transcript of the papers, " and filed his bond to comply with the conditions of his undertaking in the court below," (the securities therein having justified,) that the bond was approved, and thereupon the papers were filed, and " cause docketed, according to law."   These proceedings, in our opinion, are fairly susceptible of but one construction, and that is, that the second bond was accepted and approved by the Federal Court as a substitute for and in the place of that previously given.   They mean more than that the judge approved the form of the bond, and the sufficiency of the security.   The order of the court below was a part of the record produced; the purpose of the new bond was shown by that, as well as by its terms.   This bond is accepted, the papers filed, and the cause docketed.   Such a bond, according to the order, was required, as a condition precedent to entering the record in the Federal Court.   All these matters the judicial mind must reasonably have passed upon, and the acceptance of the new bond, and ordering the papers filed and cause docketed, in legal effect as fully released the first bond, as if an order to that effect had been made by the court.   And when it is borne in mind that plaintiff was present by his counsel when this bond was received, as well as when the

order was made in the State Court, — that this bond was withdrawn and produced to defendants, who in good faith erased their names, and surrendered the ample indemnity in their hands, and that no claim was made upon them until two years and six months after the making of the new bond, — we say, when all these facts are taken into the account, it seems to us that it would be a fraud upon them to say that they are still bound to produce the property attached, or its appraised value. There is nothing tending to show that they have acted otherwise than in the utmost good faith. They had a right to rely upon the action of the two courts, as giving to them an acquittance from their obligation. It is fairly apparent that plaintiff knew that defendants had reasonable grounds to believe that these proceedings released them, and he should not now be allowed to complain of that which he permitted, if he did not produce.

Affirmed.