AULMAN v. AULMAN ET AL. (TWO cases.)

GUELICH v. THE SAME.

1. **Assignment for Benefit of Creditors:** WHAT IS NOT: PREFER-RING CREDITORS. The transfer by an insolvent of all his property, in parcels, by deeds and mortgages, to several of his creditors, in satisfaction or security of their claims, does not constitute an assignment for the benefit of creditors, though all done at one time and as one transaction; and such conveyance cannot be set aside as being in violation of § 2115 of the Code. (See opinion for cases followed and distinguished.)

2. **Fraudulent Conveyance:** EVIDENCE: RIGHT OF CREDITOR TO SECURE PREFERENCE. A creditor has a right to secure his own claim, even though he knows that there will be nothing left to secure or satisfy other creditors; and, there being no other evidence of a fraudulent intent in the conveyances herein assailed, *held* that they could not be set aside as being in fraud of creditors.

*Appeals from Polk Circuit Court.*

MONDAY, MARCH 7.

THESE are actions for the foreclosure of mortgages given by Lorenz Aulman and George Aulman to the plaintiffs. Certain creditors of the mortgagors became parties to the suits by intervention, and they filed cross-bills, in which they claimed that the mortgages were void as to the creditors of the mortgagors. The mortgagees and plaintiffs herein were also creditors of Lorenz and George Aulman; and the suits involve the conflicting claims of creditors to the assets of an insolvent partnership. There were decrees in the court below declaring the mortgages to be void. Plaintiffs appeal.

*Goode & Phillips,* for appellants.

*Cummins & Wright* and *Barcroft & Bowen,* for appellees.

ROTHROCK, J.—I. Lorenz Aulman and George Aulman were engaged for several years in the foundry business, under the name of the Aulman Engine Works. About the first of December, 1885, they found that they were financially embarrassed and unable to meet the demands of their creditors, and, unless relieved in some way from their embarrassment,

1. ASSIGN-MENT for benefit of creditors: what is not: preferring creditors.

they would be compelled to suspend business. They conceived the plan of organizing a joint-stock company and inducing their brother William, and one Schwester, to take stock in the venture, and advance money sufficient to continue the business. This was not accomplished. Lorenz Aulman was the active business manager of the firm, and, knowing that he could not discharge the liabilities, there were given to certain of the creditors of the firm the following instruments: To the plaintiff Theodore Aulman a chattel mortgage upon all the personal property of the grantors, including books of account and notes, and another mortgage to the same party upon certain real estate; one mortgage to Theodore Guelich upon certain real estate; a deed to Lena Rompano of certain real estate, and an assignment to William Aulman of a certain chattel mortgage held by the partnership against another party. These instruments covered all of the property of the partnership, and all the property of the individual members of the firm which was subject to execution or attachment. The instruments above enumerated were all executed on the eleventh day of December, 1885, and filed for record two days afterwards. They were all prepared by the same person, and signed at the same time; and the evidence shows quite satisfactorily that they were all parts of a general design to secure the creditors to whom they were given. The defendants contend that these several instruments constituted a general assignment, and were void because they gave preference to certain of the creditors of the partnership.

It is provided by section 2115 of the Code that "no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid, unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims." It is not denied that an insolvent debtor may lawfully make such a disposition of his property as to entitle one or more creditors to a preference over others. This he may do by mort-

gage, or sale, or conveyance; and the fact that such mortgages, sales and conveyances embrace all of his property does not necessarily constitute the transaction a general assignment.

In *Van Patten v. Burr*, 52 Iowa, 518, it was held that a number of mortgages to creditors and an assignment may be taken as one transaction, and as constituting a general assignment. That case was determined upon a demurrer to the petition, in which it was alleged that the mortgages and the assignment were all parts of the same transaction, and were intended by the insolvent to operate as a general assignment for the benefit of creditors.

In *Fromme v. Jones*, 13 Iowa, 474; *Lampson v. Arnold*, 19 Id., 479; *Farwell v. Howard*, 26 Id., 381; *Kohn v. Clement*, 58 Id., 589, and *Gage v. Parry*, 69 Id., 605, and other cases, this court has held that the execution of mortgages by insolvent debtors, with the *bona fide* intention of securing particular creditors, does not operate as a general assignment for the benefit of creditors; and some of the cited cases hold that the execution of a general assignment for the benefit of creditors, within a very short time after the execution of the mortgages, cannot be considered part of the same transaction.

In the case of *Burrows v. Lehndorff*, 8 Iowa, 96, where several mortgages and deeds of trust were executed by a party in a state of insolvency, and covering all of his property, by which certain creditors were preferred to others, each instrument conveying the same property and reciting that it was subject to the prior conveyance, and all filed for record on the same day, five minutes time intervening between the filing of each, it was held that the transaction constituted, in legal effect, a general assignment, and was void. But in that case the mortgages and deeds of trust were executed by the insolvent without the knowledge of the creditors secured thereby, and it was not shown that the insolvent had creditors who were not secured in the manner above stated. One of the creditors repudiated the mortgage made to him, and attached the property of the insolvent. It

requires two or more parties to make a lawful contract; and it appears that, in the cited case, the insolvent executed the mortgages and deeds of trust, and put them on record, without consultation with the creditors he intended to secure. Their relation to the transaction was the same as they would have had to a general assignment. It might well be held, upon such a state of facts, that the transaction was a general assignment.

The facts in the case at bar are quite different. The creditors secured by the mortgages and deeds were *bona fide* creditors. The evidence shows that from the time their debts were contracted it had been contemplated by the parties that they were to be secured. It is true that Lorenz Aulman, one of the insolvent partners, sought out the creditors, and offered the security. This was done by a personal interview with one of them, and by mail with another, and by telegraph with another. All of them assented to the arrangement, and accepted the security offered. The transaction is conclusively shown by the evidence to have been intended by the debtors as security to their creditors, and, as is said in *Gage v. Parry, supra,* "they had the legal right to pay or secure any one or more of their creditors; and their right in this respect was not at all affected by the fact that they were insolvent. Nor does the fact that the whole of their assets was devoted to the payment or security of but a portion of the debts they were owing afford any ground of complaint to those creditors whose debts were unsecured." We think it is quite clear that the transaction cannot be held to be a general assignment.

II.   It was further claimed by the defendant creditors that the mortgages and the deed were void, because they were made for the purpose of hindering, delaying and defrauding the unsecured creditors. It is stated in argument that the circuit court held the instruments to be void on this ground. We have examined all of the evidence with that care which is requi-

2. FRAUDU-
LENT con-
veyance: evi-
dence : right
of creditor to
secure prefer-
ence.

site where a question of fact is triable anew in this court, and our conclusion is that, if the decree of the court below was based upon this ground, it cannot be sustained. The evidence shows that the debts secured by the instruments were valid obligations of long standing. The principal creditor secured was the mother of the partners. She was an invalid old lady, incapable of transacting business, and depended upon her son Lorenz Aulman as her business agent. Theodore Guelich was a relative of the insolvents, and resided at Burlington, in this State, and Mrs. Rompano, another relative, resided in the city of New York. When Lorenz Aulman determined to secure these claims, he called upon Mr. Phillips, an attorney, and upon his advice he communicated to the creditors the fact that it was his purpose to secure their debts. As soon as he received their assent, the securities were made and put upon record by Mr. Phillips for the creditors secured. We need not discuss the purpose or intention of the debtors in securing these creditors. It is enough to say that there is no evidence that the creditors secured had any unlawful or fraudulent motive in taking security for their debts. If they had known that the security taken by them would defeat other creditors in securing their claims, their acts would not be fraudulent. A creditor has the right to secure his own claim, although he may know that by so doing other creditors will lose their claims. Any other rule would preclude a creditor from securing a debt, because of his knowledge that his debtor was not able to pay or secure all of his creditors. There is no evidence that the plaintiffs received the mortgages with any intent to hold the property for the benefit of the insolvents. On the contrary, the mortgages were given without time, and to secure notes made payable one day after date. It is useless to further discuss this question. It appears to us that there is no evidence whatever that the instruments in question were fraudulent. Indeed, if it had been shown that these secured creditors entered into all of the purposes and acts of the debtors,

and were moved by the same intent, we question very much whether a decree holding the instruments to be fraudulent ought to be sustained.

REVERSED.