| 76 | 571 |
|----|-----|
| 81 | 699 |
| 76 | 571 |
| 97 | 480 |

STEWART BROS. v. MILLS COUNTY NATIONAL BANK.

**Fraudulent Conveyance:** WHAT IS· NOT: PREFERRING CREDITORS. A conveyance to the defendant of a stock of goods and other personal property was made by a debtor in payment of his debt and for an additional sum paid him by defendant. The conveyance was made and recorded hastily in the night, under the apprehension that other creditors might levy on the property, but there was no evidence of any intent on defendant's part to delay or defraud other creditors, but only to secure its own debt. *Held* that the transaction was a valid one, and that the property in defendant's hands could not be subjected by garnishment to the payment of the claims of less diligent creditors. (*Cadwell's Bank v. Crittenden,* 66 Iowa, 238, *distinguished.*)

*Appeal from Mills District Court.*—HON. A. B. THORNELL, Judge.

FILED, JANUARY 21, 1889.

PLAINTIFFS commenced an action, aided by attachment, to recover of A. J. Russell an amount due, and caused the Mills County National Bank, of Glenwood, to be garnished as a supposed debtor of Russell. Judgment was subsequently obtained by plaintiffs against Russell for $793.86. The answer of the garnishee was filed, and controverted by appellants. A trial by jury was had on the issues thus raised. After the evidence was submitted the court sustained a motion to direct the jury to return a verdict for the garnishee. A verdict was accordingly returned, and judgment rendered in favor of the garnishee. Plaintiffs appeal.

*Lyman & Hunter* and *Watkins & Williams,* for appellants.

*E. B. Woodruff,* for appellee.

ROBINSON, J.—On the twentieth day of July, 1887, A. J. Russell owed to the garnishee $10,331 for borrowed money, for which L. W. Russell was held as security. On that day L. W. Russell failed in business. His relations with A. J. Russell were such that the latter was led to believe that his creditors would press their claims as soon as the failure was known, and he decided to pay the garnishee and other "home creditors," so far as he could, before paying those who lived at a distance. An officer of the garnishee was sent for, and came to an office, where A. J. Russell and others were found. An attempt was first made to have Russell secure the bank by means of a chattel mortgage, but he refused to execute one. After some discussion it was agreed that Russell should convey to the bank his stock of merchandise, some other personal property, including notes and accounts and some real estate ; in consideration of which the bank was to cancel the indebtedness of Russell, which it held, and in addition to pay him $232 in money. A conveyance was drawn in accordance with the agreement, and was delivered and recorded during the night. On the twenty-second day of July, 1887, the bank was garnished in the action of plaintiffs against A. J. Russell.

It is contended by appellants that the conveyance of property to the garnishee was unlawful and void as to them, for the alleged reason that it was, in effect, a general assignment of all the property of the debtor for the benefit of but one of several creditors; that the intent of the debtor, in making the conveyance, was to hinder, delay and defraud the creditors of the debtor other than the garnishee, and that the latter accepted the conveyance with knowledge of that fact. The evidence shows without conflict that the conveyance was accepted by the garnishee in payment of a valid, subsisting indebtedness, and that the transfer was fully accomplished, and the evidence thereof duly recorded, before the garnishment was effected. It is true that the

debtor designed to prefer the garnishee to other creditors, but knowledge of that fact did not affect the right of the garnishee to secure payment of its claim, even though by so doing it prevented the collection of the claims of other creditors. *Aulman v. Aulman*, 71 Iowa, 124. No general assignment was intended by Russell. He made an absolute conveyance of the property in payment of a just demand. It is true that the negotiations took place during the night, and that haste was displayed to secure the conveyance, and place it upon record, and that it was the design of both parties to the instrument to have it recorded, and the transaction fully closed, as soon as possible, to prevent other creditors from securing liens upon the property. But so far as the garnishee was concerned this was entirely proper. The failure of L. W. Russell was known to it only one or two hours before the transfer was made, and the officers of the garnishee would have been remiss in their duty had they failed to use all reasonable diligence to obtain priority in securing the claims of the bank. We do not discover any evidence of bad faith, or a desire to aid Russell in hindering, delaying or defrauding other creditors, on the part of the bank.

It is claimed that the conclusions which we have announced are in conflict with the case of *Cadwell's Bank v. Crittenden*, 66 Iowa, 238, but we think they are not. Nothing said in that case was designed to modify or otherwise change the rule frequently announced by this court, that a debtor may pay one creditor in full, even though by so doing he exhausts his property, and becomes unable to pay others. Such a payment is not prohibited by the statute regulating assignments for the benefit of creditors. We think there was no evidence to sustain a verdict for plaintiffs, and that the jury were properly instructed to return a verdict for the garnishee.                    AFFIRMED.